Daniels, J.
The plaintiff was a creditor of John J. Mc-Ounn, who died in July, 1872. He was also the assignee of four other demands, besides his own, existing against the testator at the time of his decease. Three of these demands had passed into judgment in actions against the .executors named in the testator’s will, and to whom letters testamentary were issued in December, 1872. These judgments were assigned to the plaintiff, but as the assignments did not, in terms, include the demands, or causes of action, upon which the judgments were recovered, it has been objected that he obtained no title to those demands. But this objection is unfounded, for the rule has long been *300 settled that the assignment of a judgment carries with it the debt upon which it has been recovered. Bolen v. Crosby, 49 N. Y., 183, 187.
Neither of the judgments nor the two demands, which did not pass into judgment, was paid by the executors. And this action was commenced on the 17th of February, 1882, more than three years after their appointment and the issuing of the letters to the executors to charge these debts upon the real estate of the testator, which had been inherited by descent by his heirs. It was commenced and prosecuted under the provisions of the Code of Civil Procedure, which, in at least one material respect, has changed the law from the condition in which it stood as a part of the Revised Statutes, made applicable to actions against heirs and devisees.
• When the suit was commenced, and, until after issue was joined in it, Jane McDonald, who was one of the heirs-at-law of the testator, was made a defendant in it. And a defense presented in her favor was that the demands had been barred by the Statute of Limitations previous to the time of the commencement of this suit. But six years had not elapsed after either of the demands had accrued and .become due, before the decease of the testator, and the Statute of Limitations, for this reason, had not run in his favor, at the time of his decease, against either of these debts.
The defendant, Jane McDonald, was not a resident of this state at the time of his decease, or at any time after-wards to the time of her own decease. And because of that fact the statute of limitations did not run in her favor, and she was not entitled to rely upon it as a defense, because of the lapse of time intervening between the decease of the testator and the issuing of the letters testamentary, and the commencement of this suit. The law upon this subject is the same whether the enactment as it is contained in the Revised Statutes is followed and applied, or its enactment afterwards in the Code of Civil Procedure. For by the former law it was declared, when the cause of action shall accrue against a person who shall be out of the state such action may be commenced within the terms limited by the statute, after the return of such person into this state. 3 R. S. (6th ed.) 478, section 100; Code of Civil Procedure, section 401. And this, by subd. 3 of section 414, appears to be made applicable to this action, for it was commenced more than two years after the enactment of this part of the Code, and it had gone into effect.
The evidence given to prove the existence of the five demands set forth in the complaint was obtained from James M. Gano, who was one of the persons appointed as execu *301 tor of the testator’s estate and to whom letters testamentary were issued. His evidence concerning the existence of the demands and the liability of the estate for their payment, was objected to on the ground that he was incompetent to give it, under section 829 of the Code of Civil Procedure. The objection was overruled, and the appellants, who, as trustees, succeeded under «her will to the property of Jane McDonald, excepted to the decisions of the court permitting the witness so to testify. The ground now taken in support of this exception is that this witness was interested in the event of the action, and for that reason incompetent to give this evidence.
It was charged in the course of the trial and that position has been taken to support the appeal, that the estate of the testator was mismanaged, and his property misappropriated by his executors, and that the witness in the event of a recovery by the plaintiff in this action, would protect himself against legal liability to account for that mismanagement. Bat this result would not follow, for if he had been guilty of this misconduct the result of this suit would not relieve him from liability. Besides that at the time when his testimony was given the statute of limitations seems to have run in favor of the witness, against such a cause of action. And in addition to that, he had accounted before the surrogate and been discharged by his decree in April, 1885, more than a year before the commencement of the trial of this action. And these appellants previous to the decree, and after the report made by the auditor upon the accounting of this executor, applied for leave to become parties to the proceeding, and to resist the settlement of the accounts of this testator and his discharge from liability, but that application was denied by the surrogate. As the evidence was given also, there was no legal ground for supposing that this executor could be made liable for any mismanagement, or misappropriation, of the property of the estate, for so far as that was done it appears to have been by the misconduct of the widow, who was one of the executors and since deceased, and by Thomas McCunn, a brother of the testator, who is out of the country. They took charge of the estate and obtained possession of the misappropriated property by excluding this executor from his preceding management and control. And for their conduct, commenced and followed by this usurpation he would not be liable. There was no reason accordingly, for rejecting his evidence offered upon the trial of the action in support of the plaintiff’s demands An examination of his testimony satisfactorily sustains the conclusion, that it was sufficient, as it was not in conflict with the testimony of any other witness, although not entirely in harmony with his own preceding statement, *302 to sustain each of these demands, and to the extent also to which they were allowed by the justice presiding at the trial.
The contracts made by the heirs with Christopher Fine under which he acted in their behalf to set aside the devise of the testator’s real estate as unlawfully made, would have had no effect whatever over the disposition of the action, if they had been received in evidence, instead of having been rejected, as that was done by the court. For the demands assigned by him accrued in his favor against the testator himself, and nothing was inserted in either of the contracts inconsistent with his right to recover such demands. And having such right, it was entirely competent for him to transfer the demands' by assignment to the plaintiff.
The more immediate and serious obstacle in the way of the right óf the plaintiff to maintain the action upon either one of these demands arises out of the condition of the estate of the testator at the time of his decease, and when the letters testamentary were issued. For while the action has been prosecuted under the provisions of the Code of Civil Procedure, and it was made to appear • on the trial, and the facts were so found by the court, that the plaintiff had been and would be unable, with due diligence, to collect his debts by his proceedings in the proper surrogate’s court, or by action againt the executors, legatees or next of kin, this was not sufficient to entitle the plaintiff to recover for the causes of action accrued, if they existed at all, before this part of the Code of Civil Procedure went into effect. And while it could properly be enforced by following the form of action prescribed for this purpose by the Code, the right itself depended upon the provisions of the preceding statute. If a right of action had not accrued under those provisions, then the plaintiff was not entitled to recover, and the judgment in his favor must be held to be erroneous.
The Code, by section 3352, has recognized both the soundness and the application of this construction. For it has ‘ declared that the provisions relating to this class of cases as they are contained in chapter 15 of the Code of Civil Procedure, were not rendered effectual, or otherwise impaired any defense, or limitation, lawfully accrued, or established before the provision in question took effect, unless the contrary is expressly declared, but ‘' as far as it may be necessary for the purpose of avoiding such a result or carrying into effect such a proceeding or other act, or enforcing or protecting such a right, defense or limitation, the statutes in force on the day before the provision takes effect are deemed to remain in force notwithstanding the repeal thereof. “ If, under this general provision the heir, whose *303 rights are represented by the appellants, was not liable to the action, or had acquired and become vested with a legal defense to it under the preceding statute, she and they were as fully protected as though the law relating to this class of cases had in no manner been changed, as they have been by .section 1848 of the Code of Civil Procedure. They have insisted by way of defense that she did not become liable to this action for the reason that the personal assets of this estate which were left by the testator and passed into the hands of his executors, were more than sufficient to pay the debts for which the action has been brought, as well as all the other debts owing by the testator. The law before the enactment of this part of the Code of Civil Procedure declared the heirs of a deceased person to be liable for his debts to the extent of the estate descending to them, only when the deceased left no personal assets within this state to be administered, or his personal assets were not sufficient to pay and discharge the debt, or that after proceedings before the proper surrogate’s court, and at law, the creditor had been unable to collect his debt or some part thereof from the personal representatives of the deceased, or from his next of kin, or legatees. In case the personal assets were sufficient to pay a part of the debt, then the heirs of the deceased persons were made liable for only so much as remained unpaid or uncollected. 3 R. S. (6th ed.), 736, §§ 32-4.
. In Blossom v. Hatfield (24 Hun, 275), the action was sustained for the reason that the personal assets of the deceased were not sufficient to pay his debts, and it was, therefore, within the authority of these sections of the statute. But when his personal assets are shown to be sufficient for the payment of his debts, there the action against his heirs cannot be maintained until after proceedings have been taken before the proper surrogate’s court, or at law, for the collection of the debt, and the creditor has been unable to collect it or some part of it.
These sections of the statute refer to the condition or state of the personal assets of the deceased at the time of his own decease, or at the latest, when they are taken in charge by his personal representative. It is as to that time that the statute speaks in prescribing the right of the creditor to maintain the action without proceeding either at law or before the surrogate’s court. Bor it is as to the assets left by the deceased person, that this statutory provision has been enacted, and it is only when he has left either no personal assets, or an insufficient amount to pay and discharge his debts, that the action against the heirs can be maintained under this part of the statute. The plaintiff alleged this to be the condition of the testator’s assets, but that was contro *304 verted by the answer of Mrs. McDonald, and it was under that answer the appellants resisted the enforcement of these demands against her property. If, therefore, the testator left sufficient personal assets to pay his debts at the time of his decease, or when his estate went into the hands of his executors, then this heir, whose rights and liabilities are represented by the appellants, was vested with a legal defense by this language of the statute, and that according to section 3352 of the Code of Civil Procedure, has been preserved to her the same as though no change whatever had been made in this condition of the law. And that a sufficiency of personal estate for the payment of the testator’s debts, created such a defense, follows not only from the statute, but the construction and effect given to it in Selover v. Coe, 63 N. Y., 438.
That the deceased testator did leave an amount of personal assets sufficient to pay his debts, was proved with a reasonable degree of certainty, at least, by the evidence of this same witness. He testified, in the first instance, that the amount of the personal estate was $93,465.45, and upon a further inventory and appraisement of the personal estate, it was reported to amount to $123,439.12. This included valuable leasehold interests which the testator acquired in his life-time, and upon which he had erected buildings. And these leases were legally included in the appraisement as portions of the personal estate of the deceased under subdivision 1, section 2, of 3 Eevised Statutes (6th ed), 89. As to that, no controversy has been made in this action. And by the same witness it was stated, that the debts owing by the testator amounted to the sum of about $7.0,000. That he stated, he thought was the full amount" of unpaid claims which had been proven before himself against the estate. Neither of these subjects was pursued with any degree of particularity by either of the counsel, but the case was left to depend upon these general statements. The inventories which were made by the witness as one of the executors, together with a report of the auditor and the decree of the surrogate, were also produced upon the trial and given in evidence. But by no construction which can be placed upon them, does it appear that the debts owing by the deceased, were incapable of being paid or satisfied out of his personal assets. By the account designated as “ Schedule B,” it does appear that there were bad debts owing to the testator, amounting to the sum of $3,309. And these are all the bad debts that are shown in this schedule to have been debts owing to the testator himself. Others are stated forming a very large part of this schedule, but they are demands accruing afterwards according to their dates and after the decease of the testator. The taxes mentioned as having been paid and included in “ Schedule D,” also appear to be incapable of being allowed, for the reason that they were not shown to have accrued during the life of the testator. *305 If that fact had been proven, then their payment would be entitled to deduction from the personal assets, under the provision of the statute, for that has required taxes assessed upon the estate of the deceased previous to his death, to be paid from his personal assets, 3 R. S. (6th ed), 95; sec. 37, sub. 2. These taxes are all charged as having been paid in the year 1875, and are neither of them shown to have been imposed upon the testator’s property prior to his decease.
It has been stated in “ Schedule Q-” that there were taxes assessed against the testator and the estate to the prohable amount, with interest, of $25,000. But what part was assessed against him and what against the estate, after his decease, was not mentioned, neither have any facts or data been given by which any definite part of this sum of money can be held to have been taxes owing by him. Claims are stated to have been paid amounting to the sum of $11,937.22, but whether these, or either of them, were against the deceased himself has not been set forth or disclosed. ' And the fact that they were paid in the years 1873 and 1875 is a circumstance tending to support the view that they were against the executors themselves, after the 'estate had passed into their administration. The same is true as to rents paid upon the leases, with the exception of inconsiderable amounts mentioned by the witness in the course of his examination. And as to the expenditures contained after the first four items in “Schedule C,” they are stated to have been expenses in the care and management of the estate. These expenses formed no part of the debts owing by the testator. But they were payable out of the rents and income of the property while it was in the hands of the executors, and that the proof indicates to have been more than sufficient for this purpose. Making all the allowances which the inventories or schedules would appear to justify, and giving the executors the benefit of debts owing by the testator and shown by “Schedule H,” and amounting to the sum of $70,971.73, there still appears to have been a surplus of the personal estate amounting to upward of $49,000. And if the $10,000 taken by the widow out of the safe, upon her own unsupported statement that it had been given to her by the testator, should be added to this balance, then it will amount to the sum of $59,000, to be only further reduced by $5,000 paid under the direction of the will upon the premises devised to her for life.
It may be that such explanations will be given by way of evidence as will prove the fact to be that the personal assets were not sufficient to pay the debts of the testator, but that evidence was not elicited upon the trial of the action which was followed by the judgment now in controversy. The evidence, on the other hand, was that the personal assets greatly exceeded the debts owing by the testator, and they should have been applied by the executors to the payment *306 of his debts, including those now in controversy, all of which, except the demand due under the contract made directly with the plaintiff were included in this sum of 170,971.73.
Upon this branch of the case the liability of the real estate inherited by Jane McDonald, for payment of the testator’s debts, has not been established. But the fact, on the other hand, has been proved that the appellants, in her interest, were entitled to resist this action successfully under the provisions of the statute which have already been mentioned. Other points have been presented in support of the appeal, but they appear to be free from all ground of legal objection, but on this point these.defendants and appellants were entitled to succeed in their defense.
The judgment should be reversed and a new trial ordered, with costs to abide the event.
Brady, J., concurs.